## No. 16,952.

PROSSER *v.* SCHMIDT ET AL.

(262 P. [2d] 272)

Decided October 5, 1953.

Mr. J. NELSON TRUITT, for plaintiff in error.

Mr. MAX C. WILSON, for defendants in error.

*En Banc.*

MR. JUSTICE HOLLAND delivered the opinion of the court.

On February 14, 1942, defendants in error, to whom we will refer as defendants, by a written document of that date, agreed upon sufficient consideration therein receipted for, to convey an improved tract of ground containing one acre more or less in the City of Florence, Fremont county, Colorado, to plaintiff in error, hereinafter designated as plaintiff. Provision was made therein that defendants would execute and deliver a good and sufficient warranty deed conveying the real estate and improvements free and clear of all liens and encumbrances; further, that they would obtain full release of liens of a first and second mortgage then of record on said property; that if the title was found not to be merchantable, or made so to the satisfaction of the purchaser within ninety days after written notice of defect, the earnest money of fifty dollars receipted for would be returned to the purchaser; also in case of failure of the purchaser to fulfill the terms of the payment, then the earnest money would be retained by defendants. This document was signed by Evan C. Schmidt and Rosaltha P. Schmidt, his wife, as owners, and under the word "Approved" it is signed by James S. Prosser, purchaser. The deal was to be closed on or before May 1, 1942.

Defendants being unable to obtain releases for the encumbrances by May 1, on that day, wrote plaintiff that they had not obtained the releases, but it was their expectation that the releases would be in their hands on or before May 15, 1942, when the transaction could be consummated; they stated that if there was further delay after May 15, they would place a duly *executed* deed in escrow, and requested plaintiff to escrow the balance of the purchase price in the sum of $1,450; that they were returning the draft to plaintiff in the sum of $1,450, because of their inability to execute and deliver the required deed at that time; and further stated that they would expedite the matter in every way possible and without prejudice to plaintiff. The events that occurred between the summer of 1942 and the spring of

312

1946 concerning the consummation of the deal, and which are not too much in dispute, will hereinafter be briefly set out. However, the deal not being closed, plaintiff filed a complaint for specific performance on March 15, 1946 and after issue made, trial was had to the court on May 27, 1948, which entered judgment in favor of defendants at the close of plaintiff's case. That judgment was reviewed by our court in the case of *Prosser v. Schmidt,* 118 Colo. 502, 197 P.(2d) 318, the opinion being announced August 30, 1948, by which the judgment was reversed and the cause remanded for further proceedings. After the remand, an amended complaint was filed July 15, 1951; an amended answer on August 15; and the case was tried to the court October 4, 1951, resulting in a judgment for defendants. This judgment we now consider on review.

■ Ordinarily we are slow to disturb a judgment entered upon the fact findings made by a court or jury on conflicting evidence; however, in cases where there is no serious conflict in the evidence and the trial court makes erroneous application of the law to the facts in hand, we do not hesitate to correct the judgment, especially on questions of law in the case made abundantly clear and decided in the same litigation between the same parties when the cause was formerly before this court. There was nothing left for the trial court to do but read that decision with a willingness to follow.

The pleadings and alleged defense disclose that defendants rely upon the defense of laches, and as a basis therefor depend upon the conduct of defendants, the conduct of plaintiff, and the application of law; they contend that the trial court was right in holding that the written agreement was an option; further, that plaintiff made no demand; and therefore is not entitled to specific performance.

■ From the dates disclosed by the pleadings and the time of the filing of this action, which involves a period of approximately three years, a logical query is pre-

sented: Why the delay in instituting the action? Laches being in the nature of an equitable statute of limitations; however, the time cannot be calculated in months as can be done in computing the statute of limitations fixed in actions at law. Running of such time as may be attributed to defendants' conduct herein cannot be charged against plaintiff in trying to establish the defense of laches.

Defendants prepared the agreement fixing the date for closing the deal as of May 1, 1942. They were unable to obtain the necessary releases of the mortgage liens by that time; requested an extension until May 15; and gave plaintiff a letter to that effect in which they acknowledged the offer of plaintiff to pay the full balance of the purchase price. After May 1, defendants wrote plaintiff that the papers were in a bank; consequently, plaintiff had a right to assume they were the papers which would include the abstract of title, brought down to date, the releases of the liens, and an executed warranty deed, all of which were to be placed in the bank according to defendants' escrow arrangement. Plaintiff discovered that there were no releases placed in the bank, and that an unsigned warranty deed was there, together with the abstract. It appears that defendants were away from home much of the time during the next year or more and it is shown that plaintiff tried to contact them, but without success. The record discloses two notices from defendants to plaintiff. The first was a postcard dated June 22, 1942, in which defendants stated they had just completed the papers. This was not a true statement of fact. The only other communication from defendants to plaintiff was a letter signed by a friend of defendants stating that the abstract was in the bank with other papers waiting for approval. This also was not a true statement of facts, because no executed papers were in the bank. Due to war conditions which prevented plaintiff from obtaining material necessary for the alteration of the building on the premises, plaintiff was in no par-

ticular hurry; however, in 1944, he contacted defendants, at which time defendants offered to return half of the fifty dollars paid at the time of the signing of the agreement and call the deal off. This offer was refused by plaintiff, and in February of 1946, plaintiff went to the bank prepared to take up all of the papers if they were properly executed and found that such papers as were left by defendants had been withdrawn by them from the bank upon the statement that the deal was off. It further appears that defendants, after talking to plaintiff in 1944, decided that they wanted to use the building for some other purpose and never notified plaintiff that the deal was no longer pending. The record is wholly barren of any indication that plaintiff was not ready at all times to complete the transaction because, from the outset, his money in the form of a cashier's check was placed in the hands of defendants and returned to plaintiff pending the time that defendants could obtain the necessary papers for completion of the transaction. We have not set out every detail of the conduct of plaintiff toward carrying out his end of the obligation, because it would unduly lengthen this opinion; however, more detail does appear in the opinion in *Prosser v. Schmidt, supra.* Sufficient, however, has been stated to show good faith on the part of plaintiff and a complete lack of such faith on the part of defendants. It is interesting to note the contradictions in defendants' brief now before us. Counsel for defendants states, " * * * or if there was a delay beyond May 15, 1942, then defendants were to place in escrow an executed warranty deed and the plaintiff was to place $1,450 in escrow * * *." This statement is followed by another that, "In compliance with the above arrangement, defendants placed an *unexecuted* warranty deed in escrow * * *." (Emphasis supplied.) The facts and the statement destroy the argument presented in defendants' favor.

Another illustration of the inconsistencies of defendants' brief appears when counsel states, "Thus far, it can

easily be seen that all the papers necessary to close the transaction were in the bank in 1942 and remained until 1946 or later." In the same paragraph he further states, "The warranty deed and the release of the Rankin mortgage were unsigned." He also states that the deal was moving along nicely, defendant Schmidt had all his papers in the bank, Prosser had been notified twice, and "There is nothing left for Schmidt to do." That is equivalent to saying that the unsigned deed and no releases of the liens were a full compliance with the written statement of defendants that they were to place an executed deed in escrow. This rearrangement of the truth, apparently to create a favorable impression, is not acceptable.

■ Counsel for defendants then initiates a new feature by saying, "What the parties were attempting to set up through their arguments was a three cornered real estate sale, that is a sale in which encumbrances are released simultaneously with delivery of deed and payment of the purchase price." Notice of such arrangement never was conveyed to plaintiff and careful reading of the testimony fails to disclose any idea of a so-called three-cornered deal. Voluntary enlargement of the facts shown by the testimony in an attempt to augment defendants' defensive position, does not enhance their standing before a court of equity.

The cases cited by counsel for defendants in support of the plea or defense of laches are not at all comparable to the case at bar, and therefore are of no value as helpful citations.

Why the trial court again held that the written agreement was a mere option is beyond our comprehension, when that matter was settled beyond dispute in the former opinion of this court in the following words, "It is urged in behalf of defendants in error that the contract did not provide mutual obligations. If so, this was cured by plaintiff's tender of performance."

■ It is abundantly clear that defendants never at

any time did the things necessary to perfect or carry out their part of the agreement by which they were bound when they accepted the original consideration for binding the agreement, and in addition made false representations as to what they had done. Delay that might be chargeable to plaintiff did not start to run against him until there was full tender of performance on the part of defendants. It is true considerable time elapsed, but plaintiff cannot be charged with laches for failing to perform a contract that never was made possible for his performance.

The judgment is reversed and the cause remanded with direction to enter judgment for specific performance in accordance with the prayer of the complaint.